UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

MARIANNE BRIGANDO and PAMELA JOY BINDER,

 Plaintiff(s),

v.

WALT DISNEY WORLD CO., AND/OR WDW HOSPITALITY & RECREATION CORP. AND/OR ABC CORPORATION #1-10 AND/OR THEIR AGENTS, REPRESENTATIVES AND/OR EMPLOYEES, JOHN DOES #1-10,

 Defendant(s).

Civil No. 06-1191 (WJM-RJH)

---

# DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE HEDGES' JULY 6, 2006 ORDER PURSUANT TO L.CIV.R. 7.1(i)

Stacey P. Rappaport (SR 4359)
Lauren D. Godfrey (LG 2080)
DRINKER BIDDLE & REATH LLP
*A Pennsylvania Limited Liability Partnership*
500 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 360-1100
Attorneys For Defendant,
Walt Disney World Hospitality & Recreation Corporation

Returnable: August 22, 2006

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ............ 3

LEGAL ARGUMENT ............................................................................................... 6

    A.   STANDARD FOR RECONSIDERATION PURSUANT TO
          L. CIV. R. 7.1(i) ............................................................................................ 6

    B.   THE RECORDED STATEMENTS OF CHARLES LOVE AND JASON
          NAGASSAR ARE PROTECTED FROM DISCLOSURE BY THE
          ATTORNEY WORK PRODUCT DOCTRINE ....................................... 7

    C.   THE RECORDED STATEMENTS OF CHARLES LOVE AND JASON
          NAGASSAR ARE NOT DISCOVERABLE BECAUSE PLAINTIFFS
          CANNOT OVERCOME THE PROTECTION AFFORDED BY THE
          ATTORNEY WORK PRODUCT DOCTRINE. ..................................... 12

CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

Arab African International Bank v. Epstein, 1992 U.S. Dist. LEXIS 18350
(D.N.J. 1992)..................................................................................................6

Bowers v. National Collegiate Athletic Associate, 130 F. Supp. 2d 610 (D.N.J.
2001).............................................................................................................6

Cendant Corp. Securities Litigation, 343 F.3d 658 (3d Cir. 2003)....................12

Diversified Industrial Inc. v. Meredith, 572 F.2d 596 (8th Cir. 1977) ...............10

Gabapentin Patent Litigation, 214 F.R.D. 178 (D.N.J. 2003).....................8,9,10

George v. Siemens Industrial Automation, Inc., 182 F.R.D. 134 (D.N.J. 1998).........8,9,10

Grand Jury Empanelled, 633 F.2d 282 (3d Cir. 1980).......................................12

Grand Jury Investigation, 599 F.2d 1224 (3d Cir. 1979)...............................10,12

Grand Jury Proceedings, 604 F.2d 798 (3d Cir. 1979) .......................................9

Harding v. Dana Transport, Inc., 914 F. Supp. 1084 (D.N.J. 1996)....................8

Harper v. Automobile-Owners Insurance Co., 138 F.R.D. 655 (S.D. Ind. 1991) ..........9,10

Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3rd Cir. 1985) ....................................6

Henderson v. Zurn, 131 F.R.D. 560 (S.D. Ind. 1990)........................................10

Hickman v. Taylor, 67 S. Ct. 385 (1947).......................................................8,12

Leonen v. Johns-Manville, 135 F.R.D. 94 (D.N.J. 1990)................................9,10

Maertin v. Armstrong World Industrial, 172 F.R.D. 143 (D.N.J. 1997) .....7, 8,10

Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252 (3d Cir. 1993)................. 9-12

Panna v. Firstrust Sav. Bank, 760 F. Supp. 432 (D.N.J. 1991)............................6

Slater v. KFC Corp., 621 F.2d 932 (8th Cir. 1980) .............................................6

Taroli v. General Electric Co., 114 F.R.D. 97 (N.D. Ind. 1987) .......................10

United Coal Cos. v. Powell Construction Co., 839 F.2d 958 (3d Cir. 1988) .................... 7,8

United States of America v. Ernstoff, 183 F.R.D. 148 (D.N.J. 1998) ........................... 8-12

United States v. Nobles, 95 S. Ct. 2160 (1975) ................................................................ 8

United States v. Rockwell International, 897 F.2d 1255 (3d Cir. 1990) ....................... 9,10

## STATUTES

28 U.S.C. §1332 ............................................................................................................. 3-5

Fed.R.Civ.P. 26(b)(3) .................................................................................................. 7,8,12

SFNJ1 1129659v1

## **PRELIMINARY STATEMENT**

Defendant Walt Disney World Hospitality and Recreation Corp. ("HRC") submits this Brief and the Certifications of Stacey P. Rappaport ("Rappaport Cert.") and Michelle Ramsey ("Ramsey Cert.") in support of its motion for reconsideration of the Order entered by the Honorable Ronald J. Hedges' in this matter on July 6, 2006, pursuant to L.Civ.R. 7.1(i) (formerly L.Civ.R. 7.1(g)). Specifically, HRC seeks an Order vacating that portion of Judge Hedges Order that requires HRC to produce the recorded statements of two employees; namely, Charles Love and Jason Nagassar.

On July 5, 2006, the parties appeared before this Court to discuss a number of outstanding discovery disputes that they had been unable to resolve without the Court's intervention[1]. The Court's July 5, 2006 rulings are embodied in an Order dated July 6, 2006 ("the Order"), which was entered on July 7, 2006 (Rappaport Cert., Exhibit A).

During the conference, the Court ruled that HRC was required to produce the recorded statements of Messrs. Love and Nagassar, who had arrived at the scene of the alleged incident after it occurred, despite HRC's contention that these statements were protected from disclosure by the attorney work product doctrine.[2] Because the Court's determination that these documents do not constitute work product was made during an informal conference, HRC did not have the opportunity to brief the issue or demonstrate that the statements were prepared in anticipation of litigation. Furthermore, because the issue was addressed during a conference as opposed to a

---

[1] HRC has ordered the transcript of the July 5, 2006 hearing before Magistrate Hedges and will supplement this submission when it is received.

[2] These recorded statements are mistakenly referred to in the July 6, 2006 Order as "2 'accident' reports contained in HRC's answer to Interrogatory #6." However, the transcript will reflect that the Court ordered HRC to produce Mr. Love's and Mr. Nagassar's recorded statements.

formal hearing, the Court did not have the benefit of, and was not able to consider, the relevant facts or controlling case law to make a fully informed determination on this issue. Finally, because the documents were not the subject of a formal motion, HRC has not had the opportunity to present all of the facts and case law necessary to support its claim that these statements are attorney work product. For these reasons, HRC respectfully requests that this Court reconsider its ruling with regard to the statements, and vacate that portion of the Order that requires HRC to produce the statements.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiffs instituted this action in New Jersey state court in April 2005 against HRC and Walt Disney World Co. ("WDW"). HRC answered the Complaint in November 2005. Thereafter, this case was properly removed, pursuant to 28 U.S.C. §1332.

Plaintiffs' personal injury Complaint asserts that Ms. Brigando suffered severe injuries to her head, limbs and body when she purportedly hit the back of her head while riding the Splash Mountain attraction in Florida. (Rappaport Cert., Exhibit B). The Complaint also asserts that HRC "owned, operated, controlled, supervised, maintained, inspected, repaired and/or constructed" that attraction. (Id.). Ms. Brigando alleges that she was injured due to the alleged negligent manner in which HRC "owned, operated, controlled, supervised, maintained, inspected, repaired and/or constructed the premises/attraction in question." (Id.).

On July 27, 2004, before this lawsuit was filed, HRC's Guest Claims Department received a letter from plaintiffs' attorney, Adam Rothenberg. Mr. Rothenberg advised HRC that he represented Ms. Brigando with regard to "injuries sustained on June 17, 2004, while riding your Splash Mountain log flume." (Ramsey Cert., ¶2, Exhibit A). Mr. Rothenberg requested that HRC take note of his representation and to confirm that HRC would "preserve all photographs and videotapes of the scene, as well as the specific flume 'boat.'" (Id.). He also requested a copy of the "incident report" regarding this matter. (Id.).

HRC's Claims Representative, Michelle Ramsey, responded to Mr. Rothenberg on July 30, 2004, and acknowledged his representation of Ms. Brigando. (Id., ¶3 Exhibit B). Among other things, Ms. Ramsey requested that Mr. Rothenberg contact her to arrange a convenient time to take a recorded statement from Ms. Brigando. (Id.). In addition, she asked him to

3

provide copies of Ms. Brigando's medical records and advise when he expected Ms. Brigando to reach maximum medical improvement. (Id.).

In a letter dated August 9, 2004, Mr. Rothenberg again requested "a copy of the Incident Report and all documentation pertaining to the accident which was reported at Walt Disney World at the time." (Id., ¶4, Exhibit C). In addition, he asked for "any media, specifically video tape or photographs, depicting Ms. Brigando, the incident, the watercraft or the ride." (Id.). With regard to Ms. Ramsey's request for a statement, he said: "If you wish an attorney on behalf of Walt Disney World to take her deposition now in lieu of any that may be taken during any potential litigation, then that might be considered." (Id.). He advised Ms. Ramsey that "Ms. Brigando is presently under treatment for her injuries to her head and neck and has suffered a significant close-head injury." Mr. Rothenberg committed to supply medical records when Ms. Brigando completed treatment. (Id.).

Mr. Rothenberg wrote to Ms. Ramsey again on October 13, 2004. He again asked Ms. Ramsey to produce a copy of the Incident Report and any videotapes or photographs of the incident or Ms. Brigando on the attraction. (Id., ¶5, Exhibit D).

Upon receiving Mr. Rothenberg's July 14, July 30 and August 4, 2004 letters, and pursuant to previously established procedures set forth by HRC's legal counsel, Ms. Ramsey conducted the recorded interviews of Charles Love and James Nagassar, HRC employees who arrived at the scene of the alleged incident after it occurred. (Ramsey Cert., ¶ 8). Ms. Ramsey interviewed Mr. Love on August 25, 2004, and Mr. Nagassar on October 21, 2004, well after Mr. Rothenberg expressed his intent to initiate litigation. (Id.).

HRC's Guest Claims Department does not take recorded statements of employee witnesses in the ordinary course of its business. (Id., ¶ 9). Rather, claims representatives

typically conduct investigations, including interviews of employee witnesses, only when sufficient notice is received that a claim or litigation may arise from an alleged incident. (Id.). In this specific case, Mr. Rothenberg's July 27, 2004 and August 9, 2004 letters provided clear and express notice to HRC that Ms. Brigando was submitting a claim related to the alleged incident. (Id.). Those letters also provided clear and express notice to HRC that litigation was assured, if not imminent. (Id.). This fact is supported by the statement in Mr. Rothenberg's August 9, 2004 letter regarding future depositions, which implies an imminent litigation. (Id.). But for Mr. Rothenberg's communications advising that he represented Ms. Brigando with regard to her claim for alleged injuries, HRC would not have conducted the interviews that are the subject of this motion. (Id.). These recorded interviews were conducted pursuant to procedures established and supervised by HRC's legal counsel. (Id.).

## LEGAL ARGUMENT

### A.   STANDARD FOR RECONSIDERATION PURSUANT TO L. CIV. R. 7.1(i).

A party who seeks to alter or amend an order may move for reconsideration pursuant to L.Civ.R. 7.1(i). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) (citing Slater v. KFC Corp., 621 F.2d 932, 933 (8th Cir. 1980), cert. den., 106 S.Ct. 2895 (1986)). Reargument or reconsideration should be granted where the court "overlooked" dispositive facts or controlling decisions of law. See L.Civ.R. 7.1(i); Bryan v. Shah, 351 F.Supp.2d 295, 304 n.2 (D.N.J. 2005) (where neither party briefed the application of an exception to the requirement for an affidavit of merit in a malpractice case, the court deemed the issue overlooked "in the sense that it played no role in the court's decision") (citing Bowers v. Nat'l Collegiate Athletic Assoc., 130 F.Supp.2d 610, 612 (D.N.J. 2001)). "A party seeking reconsideration must show more than a disagreement with the court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" Panna v. Firstrust Sav. Bank, 760 F.Supp. 432, 435 (D.N.J. 1991) (citations omitted).

The court should grant a motion for reconsideration where the matters that were overlooked, if considered by the court, "'might reasonably have altered the result reached....'" Id. (citations omitted). "There is nothing to prevent the court from examining new facts or evidence that might lead to a different result if considered by the court." Id. (citations omitted); accord, Arab African Int'l Bank v. Epstein, 1992 U.S. Dist. LEXIS 18350 (D.N.J. 1992) ("if the court finds that its consideration of evidence offered for the first time on motion for reargument

6

may lead to a different result than was reached originally, the court has discretion to consider that evidence"). (A copy of this decision is attached to the Rappaport Cert. at Exhibit C).

HRC respectfully submits that the Court was not able to consider controlling facts and case law before it ruled that the recorded statements of Charles Love and Jason Nagassar must be produced in discovery. Thus, HRC did not have the opportunity to brief the issue and demonstrate that the recorded statements are attorney work product. As a result, the Court has not had the opportunity to consider all of the relevant facts and controlling case law necessary to make a determination on whether these documents were prepared in anticipation of litigation. Furthermore, the Court did not have the opportunity to review the recorded statements *in camera* prior to making its ruling.[3] HRC respectfully requests that this Court grant HRC's motion to reconsider the July 6, 2006 Order and vacate that portion of the Court's Order that requires HRC to produce the recorded statements of Charles Love and Jason Nagassar.

### B. THE RECORDED STATEMENTS OF CHARLES LOVE AND JASON NAGASSAR ARE PROTECTED FROM DISCLOSURE BY THE ATTORNEY WORK PRODUCT DOCTRINE.

In cases where the district court exercises diversity jurisdiction, the work product doctrine is governed by uniform federal law embodied in Fed.R.Civ.P. 26(b)(3). See Maertin v. Armstrong World Indus., 172 F.R.D. 143, 147 (D.N.J. 1997) (citing United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir. 1988)). Since this Court has diversity jurisdiction over this case, federal law governs this issue.

---

[3] At the Court's request, HRC will provide the August 25, 2004 recorded statement of Charles Love and the October 21, 2004 recorded statement of Jason Nagassar to the court for *in camera* review.

7

Documents upon which a work product privilege claim is made "must be inspected by the court *in camera* and ruled upon." United Coal Cos., 839 F.2d at 967. The work product doctrine, codified in Rule 26(b)(3), provides in pertinent part:

> A party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3). The doctrine "provides an independent basis upon which litigants may rely for protection of an attorney's trial preparation thoughts and materials." Maertin, 172 F.R.D. at 147 (citing Hickman v. Taylor, 67 S. Ct. 385 (1947)). "The purpose of the work product doctrine is to encourage careful and thorough preparation for litigation by a party's attorney." United States of America v. Ernstoff, 183 F.R.D. 148, 153 (D.N.J. 1998) (citing United States v. Nobles, 95 S. Ct. 2160 (1975); George v. Siemens Indus. Automation, Inc., 182 F.R.D. 134, 139-40 (D.N.J. 1998); Harding v. Dana Transport, Inc., 914 F. Supp. 1084, 1097 (D.N.J. 1996)). "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Maertin, 172 F.R.D. at 147 (quoting Hickman, 329 U.S. at 511). "[A]n attorney's expectation that his work will remain private is essential to the proper preparation of his client's case...." In re: Gabapentin Patent Litigation, 214 F.R.D. 178, 183 (D.N.J. 2003).

"The party asserting work product protection has the burden of demonstrating that the documents were 'prepared in anticipation of litigation.'" Id. (quoting Conoco, Inc. v. U.S. Dep't of Justice, 687 F.2d 724, 730 (3d Cir. 1982); George, 182 F.R.D. at 140)). In the Third Circuit, courts have applied a two-part test to determine whether documents should be protected from disclosure by the attorney work product doctrine. Id. The first prong is the "'reasonable anticipation'" test, which requires that the "'court determine at what point in time litigation could reasonably have been anticipated.'" Id. (quoting Ernstoff, 183 F.R.D. at 155) (citing Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 659 (S.D. Ind. 1991)). "The mainstay of work product protection lies in the deceivingly simple phrase, 'in anticipation of litigation.'" Ernstoff, 183 F.R.D. at 155 (citing United States v. Rockwell Int'l, 897 F.2d 1255, 1266 (3d Cir. 1990) ("'the question whether a document was prepared in anticipation of litigation is often a difficult factual matter'"); Leonen v. Johns-Manville, 135 F.R.D. 94 (D.N.J. 1990) ("'the phrase, 'anticipation of litigation' is incapable of precise definition'")). "To determine whether a document was 'prepared in anticipation of litigation,' the appropriate inquiry is 'whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Id. (quoting Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir. 1993) (citing Rockwell, 897 F.2d at 1266; In Re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979); George, 182 F.R.D. 140-41)).

"[T]here is no clear cut rule as to the point in time when an investigation or evaluation of a claim is considered preparation for litigation," however, "courts generally find that a 'party must show more than a 'remote prospect', an 'inchoate possibility,' or a 'likely chance of litigation.'" Id. (citations omitted). A party asserting the privilege "should demonstrate that

9

there existed 'an identifiable specific claim or impending litigation when the materials were prepared.'" Id. (quoting Auto-Owners Ins,. Co., 138 F.R.D. at 660; Leonen, 135 F.R.D. at 97). "The mere involvement of, consultation with, or investigation by an attorney does not, in itself, evidence the 'anticipation of litigation.'" In re: Gabapentin Patent Litigation, 214 F.R.D. at 183 (citing Henderson v. Zurn, 131 F.R.D. 560, 571 (S.D. Ind. 1990); Taroli v. General Elec. Co., 114 F.R.D. 97, 98 (N.D. Ind. 1987); Leonen, 153 F.R.D. at 97)). Furthermore, "a person's 'unilateral belief' that litigation will result is the initial focus of the inquiry into whether the document was prepared 'in anticipation of litigation.'" Maertin, 172 F.R.D. at 148 (finding that defendant's subjective belief that litigation with a number of investigating agencies was probably going to ensue was objectively reasonable) (quoting Martin, 983 F.2d at 1260)). "[T]he preparer's anticipation of litigation must be tempered by objective reasonableness." Id.

The second prong of the test is whether "'the material [was] produced because of the prospect of litigation and for no other purpose.'" Id. at 183-84 (quoting Auto-Owners Ins. Co., 138 F.R.D. at 660; see Diversified Indus. Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir. 1977)). "The work product doctrine clearly precludes the protection of documents created in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for any nonlitigation purpose.'" Martin, 983 F.2d at 1260 (citing Rockwell Int'l, 897 F.2d at 1266). "[C]ase law and the language of Rule 26(b)(3) maintain that although the point at which litigation of a case can be reasonably anticipated is legitimate, the work product rule depends primarily on the reason or purpose for the documents' production." Ernstoff, 183 F.R.D. at 156 (citing In re Grand Jury Investigation, 599 F.2d 1224, 1229 (3d Cir. 1979); Auto-Owners Ins. Co., 138 F.R.D. at 661). Thus "'both components of the [work product] standard must be satisfied.'" Id. (quoting Auto-Owners Inc. Co., 138 F.R.D. at 661).

10

In this case, there was more than a "remote prospect" of litigation when HRC received Mr. Rothenberg's letters. See Ernstoff, 183 F.R.D. at 155. In fact, Mr. Rothenberg's July 14, July 27 and August 4 letters were a clear indication to HRC that litigation was imminent. (Ramsey Cert., ¶9). Not only did plaintiffs' counsel contact Ms. Ramsey and advise her that Ms. Brigando had retained counsel with regard to a specific claim for her alleged injuries, he also asked HRC to preserve and produce relevant evidence and suggested that HRC take Ms. Brigando's deposition in lieu of a future deposition after, not if, suit was filed. (Id.). Based on these statements, it was entirely reasonable for HRC, and its legal department, to begin assembling information regarding plaintiff's claim that she was injured on the Splash Mountain log flume because they believed that litigation was going to ensue. Clearly, under these facts, HRC's belief that litigation was imminent was reasonable.

Furthermore, in this case, the primary motivating purpose behind the creation of the recorded statements was to aid in possible future litigation. See Ernstoff, 183 F.R.D. at 156. These documents were not prepared for any purpose other than litigation. See Martin, 172 F.R.D. at 148. As Ms. Ramsey states in her Certification, she conducted her investigation at the direction of the legal department and the interviews would not have been conducted but for Mr. Rothenberg's letters referencing not only Ms. Brigando's claim, but her intent to sue HRC for that claim. (Ramsey Cert., ¶9).

Here, both prongs of the test are satisfied. The relevant evidence in this case clearly demonstrates that 1) HRC reasonably (and, as it turns out, correctly) believed that litigation was imminent when it took the recorded statements of Charles Love and Jason Nagassar, and 2) the recorded statements were taken for the sole purpose of preparing for that litigation. Thus, the

recorded statements of Charles Love and Jason Nagassar are protected from disclosure by the attorney work product doctrine.

### C. THE RECORDED STATEMENTS OF CHARLES LOVE AND JASON NAGASSAR ARE NOT DISCOVERABLE BECAUSE PLAINTIFFS CANNOT OVERCOME THE PROTECTION AFFORDED BY THE ATTORNEY WORK PRODUCT DOCTRINE.

Once the movant demonstrates that materials were prepared in anticipation of litigation, the opposing party must overcome the protection. See Maertin, 172 F.R.D. at 150 (citing Hickman, 329 U.S. at 512); see In re Grand Jury Investigation, 599 F.2d at 1230). To overcome the protection afforded by the work product doctrine, the opposing party must show 1) a substantial need for the materials in the preparation of the party's case; and 2) that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. See In re: Cendant Corp. Securities Litigation, 343 F.3d 658, 663 (3d Cir. 2003) (quoting Fed. R. Civ. P. 26(b)(3)). "Courts require a party seeking to overcome the work product protection to show that they failed at all attempts to discover the material through alternative sources." Ernstoff, 183 F.R.D. at 155 (citing Martin, 983 F.2d at 1255; In re Grand Jury Empanelled, 633 F.2d 282, 290 (3d Cir. 1980); George, F.Supp.2d at 141).

Here, plaintiffs cannot overcome the work product protection because they have not attempted to discover the material through alternative sources. For example, plaintiffs may discover the information they seek by taking the depositions of Charles Love and Jason Nagassar. Until plaintiffs take their depositions, and question them about the events at issue, plaintiffs cannot show that they are unable to obtain the substantial equivalent of the materials by other means. For these reasons, HRC respectfully submits that plaintiffs have not shown that

they are unable to obtain the substantial equivalent of the recorded statements by other means, and therefore the statements are protected from disclosure by the attorney work product doctrine.

## **CONCLUSION**

For the foregoing reasons, HRC respectfully requests that the Court vacate that portion of the Order that requires HRC to produce the August 25, 2004 statement of Charles Love and the October 21, 2004 statement of Jason Nagassar.

                                                    Respectfully submitted,

                                                   DRINKER BIDDLE & REATH LLP
                                                   Attorneys for Defendant

                                                By: /s/ Stacey P. Rappaport
                                                       Stacey P. Rappaport (SR 4359)

Dated:  July 21, 2006