UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

----------------------------------------

MARIANNE BRIGANDO and PAMELA JOY BINDER,

    Plaintiff(s),

v.

WALT DISNEY WORLD CO., AND/OR WDW HOSPITALITY & RECREATION CORP. AND/OR ABC CORPORATION #1-10 AND/OR THEIR AGENTS, REPRESENTATIVES AND/OR EMPLOYEES, JOHN DOES #1-10,

    Defendant(s).

----------------------------------------

Civil No. 06-1191 (SRC-CCC)

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE THIRD COUNT OF PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(c)**

---

James M. Altieri (JA 9733)
Stacey P. Rappaport (SR 4359)
DRINKER BIDDLE & REATH LLP
*A Pennsylvania Limited Liability Partnership*
500 Campus Drive
Florham Park, New Jersey 07932-1047
(973) 360-1100
Attorneys For Defendant,
Walt Disney World Hospitality & Recreation Corporation

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................... 1
STATEMENT OF FACTS & PROCEDURAL HISTORY ................................................... 3
LEGAL ARGUMENT
  A. Standard for Dismissal under Fed. R. Civ. P. 12(c) ............................................... 4
  B. Count Three of Plaintiffs' Complaint Fails to State a Claim Upon Which Relief May be Granted ............................................................................................ 5
CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

**CASES**                     **PAGE**

Assoc. General Contractors of Calif., Inc. v. California State Council of Carpenters,
    459 U.S. 519 (1983) ...........................................................................................4

Burns v. Belafsky,
    166 N.J. 466 (2001) ...........................................................................................6

Commonwealth of Pennsylvania v. PepsiCo, Inc.,
    836 F.2d 173 (3d Cir. 1988) .............................................................................4

DP Enterprises, Inc. v. Bucks County Community College,
    725 F.2d 943 (3d Cir. 1984) .............................................................................4

Derensis v. Coopers & Lybrand Chartered Accountants,
    930 F. Supp. 1003 (D.N.J. 1996) .....................................................................4

Doe v. Div. of Youth & Family Serv.,
    148 F. Supp. 2d 462 (D.N.J. 2001) ..................................................................4

H.J. Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989) ...........................................................................................4

Hennefeld v. Township of Montclair,
    22 N.J. Tax 166 (N.J. Tax. Ct. 2005) ..........................................................8, 9

In re K-Dur Antitrust Litig.,
    338 F. Supp. 2d 517 (D.N.J. 2004) ..................................................................4

Lennon v. Charney,
    797 N.Y.S.2d 891 (N.Y. Sup. Ct. 2005) ..........................................................7

Leonardis v. Morton Chemical Co.,
    184 N.J. Super. 10 (App. Div. 1982) ...............................................................5

Lewis v. Harris,
    188 N.J. 415 (2006) .....................................................................................8, 9

Maudsley v. State of New Jersey,
    357 N.J. Super. 560 (App. Div. 2003) .............................................................5

Oshiver v. Levin, Fishbein, Sedran & Berman,
    38 F.3d 1380 (3d Cir. 1994) .............................................................................4

Quarto v. Adams,
  No. A-3904-06T1, ___ A.2d ___, 2007 WL 2262736
  (N.J. Super. App. Div.Aug. 9, 2007) .................................................................9, 10

Savarese v. New Jersey Automobile Full Insurance Underwriting Assoc.,
  235 N.J. Super. 298 (App. Div. 1989) ......................................................................9

Schroeder v. Boeing,
  712 F. Supp. 39 (D.N.J. 1989) ..............................................................................5, 6

Stahl v. Nugent,
  212 N.J. Super. 340 (Law Div. 1986) .......................................................................6

Tichenor v. Santillo,
  218 N.J. Super. 165 (App. Div. 1987) ......................................................................5

Tornquist v. Perkowski,
  208 N.J. Super. 88 (Law Div. 1984) ........................................................................5

Tremblay v. Carter,
  390 So. 2d 816 (Fl. Ct. App. 1980) ..........................................................................5

Vital State Canada Ltd. v. DreamPak LLC,
  303 F. Supp. 2d 516 (D.N.J. 2003) ...........................................................................5

Yost v. General Motors Corp.,
  651 F. Supp. 656 (D.N.J. 1986) ................................................................................4

**STATUTES**

N.J.S.A. § 26:8A-2(d) .................................................................................................6, 8

N.J.S.A. § 26:8A-4.1 ....................................................................................................10

N.J.S.A. § 37:1-28 .....................................................................................................8, 9

N.J.S.A. § 37:1-32(b) ......................................................................................................8

**RULES**

Fed. R. Civ. P. 12(c) .......................................................................................................4

N.J. Ct. R. 4:6-2(e) .........................................................................................................3

**LEGISLATIVE HISTORY**

State of New Jersey, Assembly Appropriations Committee Statement to Assembly on
No. 3743, L. 2003 c. 246 (Dec. 11, 2003) *reprinted in*
N.J.S.A. § 26:8A-1, annotations ............................................................................................7

## PRELIMINARY STATEMENT

Defendant Walt Disney World Hospitality & Recreation Corporation ("HRC") submits this brief in support of its motion to dismiss plaintiff Pamela Joy Binder's loss of consortium claim, with prejudice, pursuant to Federal Rule of Civil Procedure 12(c). Plaintiffs Marianne Brigando and Pamela Joy Binder seek damages for injuries allegedly sustained by Ms. Brigando on or about June 17, 2004, when she purportedly hit the back of her head while riding on the Splash Mountain attraction in Florida. Plaintiff Pamela Joy Binder, Ms. Brigando's same-sex life partner, seeks damages for the loss of Ms. Brigando's love, services and consortium.

Under current New Jersey law, a legal marriage or civil union is the cornerstone of a loss of consortium claim. At the time of the alleged injury, however, New Jersey did not recognize the rights of same-sex couples to enter into a civil union. Additionally, the Domestic Partnership Act ("DPA"), which extended certain benefits traditionally reserved to married couples to registered domestic partners, did not become effective until July 10, 2004, almost a month after the alleged injury to Ms. Brigando. Even if the DPA had been in effect at the time of the alleged injury, the DPA did not provide couples registered as domestic partners with the right to pursue loss of consortium claims. Although it appears that Ms. Brigando and Ms. Binder registered as domestic partners under the DPA at some point after July 10, 2004, they were not registered as such at the time of the injury. Thus, even if the DPA allowed domestic partner loss of consortium claims, which it did not, a loss of consortium claim requires that the underlying injury occur during the marriage (or, arguably, following registration under the DPA) and the DPA does not apply retroactively.

Finally, the civil union statute recently enacted by the New Jersey Legislature does afford a right to a loss of consortium claim to same-sex couples who enter into a civil union. There is no

- 2 -

evidence that Ms. Brigando and Ms. Binder have entered into a civil union, as is now permitted under New Jersey law, however. Even if they had, that option did not become available to them until February 19, 2007, and, like the DPA, the civil union statute cannot have retroactive effect.

Ms. Binder's *per quod* claim is not cognizable under New Jersey law, and HRC respectfully requests that the Court dismiss that claim with prejudice.

## STATEMENT OF FACTS & PROCEDURAL HISTORY

Plaintiffs instituted this action in New Jersey state court in April 2005 against HRC and Walt Disney World Co. ("WDW"). In September 2005, the state court dismissed plaintiffs' claims against WDW pursuant to N.J. Ct. R. 4:6-2(e). HRC answered the Complaint in November 2005. Subsequently, in February 2006, plaintiffs served their answers to HRC's interrogatories which revealed, for the first time, that their claimed damages exceeded $75,000. HRC then properly removed the action to this Court.

The Complaint alleges that Ms. Brigando suffered personal injuries while riding as a passenger on the Splash Mountain attraction in Florida on June 17, 2004. (See Compl., Count I, ¶ 1, attached to the Certification of Stacey P. Rappaport as Exhibit A). Ms. Binder, described in the Complaint as Ms. Brigando's "life partner," asserts a loss of consortium claim. (See Compl., Count III, ¶ 2). Specifically, Ms. Binder seeks recovery for loss of Ms. Brigando's "love, services and consortium." (Id.). At the time of the incident, however, Ms. Binder and Ms. Brigando were unmarried cohabitants. Ms. Binder is not entitled to recovery for loss of consortium under New Jersey law, and her claim should therefore be dismissed with prejudice.

## LEGAL ARGUMENT

**A.**     **Standard for Dismissal under Fed. R. Civ. P. 12(c).**

Pursuant to Federal Rule of Civil Procedure Rule 12(c), a defendant may move to dismiss a Complaint after filing an answer. See Doe v. Div. of Youth & Family Serv., 148 F. Supp. 2d 462, 497 (D.N.J. 2001). "The standard for determining a motion for judgment on the pleadings under Rule 12(c) is the same standard used for deciding a motion to dismiss, pursuant to Rule 12(b)(6)." In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 528 (D.N.J. 2004). When assessing such a motion, a court must accept as true all factual allegations in the Complaint and "view them in a light most favorable" to the plaintiff. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249 (1989); DP Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984). The goal is to enable a defendant to challenge deficient claims without subjecting the defendant and the court to potentially unnecessary and wasteful discovery. See Derensis v. Coopers & Lybrand Chartered Accountants, 930 F. Supp. 1003, 1012 (D.N.J. 1996). If the facts alleged in the Complaint do not entitle the claimant to relief, the court must dismiss a claim under Rule 12(b)(6) or Rule 12(c). Id.

In making its decision, the court may consider the Complaint and any exhibits attached thereto, matters of public record, orders, and other items in the record. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). However, "conclusory allegations, unsupported by facts, cannot withstand a motion to dismiss." Yost v. General Motors Corp., 651 F. Supp. 656, 657 (D.N.J. 1986); Commonwealth of Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 179 (3d Cir. 1988) (the court does not consider conclusory recitations of law). Likewise, the court should not assume that a plaintiff can prove facts not alleged. See Assoc. General

Contractors of Calif., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

**B.   Count Three Fails to State a Claim Upon Which Relief May be Granted.**

In the Third Count of the Complaint, Ms. Binder attempts to raise a *per quod* or loss of consortium claim. See Tornquist v. Perkowski, 208 N.J. Super. 88, 92 n.2 (Law Div. 1984) (noting that, under New Jersey law, a *per quod* claim is essentially one for loss of consortium), rev'd on other grounds by Tichenor v. Santillo, 218 N.J. Super. 165 (App. Div. 1987). However, such claims may be brought by married spouses only, and only when the underlying injury occurred during the course of the marriage.[1] In New Jersey, the "right of recovery for loss of consortium…is founded upon the marriage relation. Absent such relationship, the right does not exist, and thus no recovery may be had for loss thereof." Leonardis v. Morton Chemical Co., 184 N.J. Super. 10, 11 (App. Div. 1982). At the time of the accident, however, Ms. Binder and Ms. Brigando were unmarried "life partners." New Jersey law does not recognize Ms. Binder's loss of consortium claim.

As recently affirmed by the Appellate Division in Maudsley, a *per quod* claim in New Jersey "is only maintainable by reason of a spouse's personal injury[.]" Maudsley v. State of New Jersey, 357 N.J. Super. 560, 588 (App. Div. 2003). Consequently, *per quod* relief has been denied where the claimant's spouse was injured before the couple was legally married. See, e.g., Schroeder v. Boeing, 712 F. Supp. 39, 39 (D.N.J. 1989). In Schroeder, the plaintiff, a former

---

[1] A federal law sitting in diversity must apply the choice of law rules of the forum state. Vital State Canada Ltd. v. DreamPak LLC, 303 F. Supp. 2d 516, 520-21 (D.N.J. 2003). "Under the two-step New Jersey choice-of-law analysis, the first step involves determining whether a conflict exists between the law of the interested states." Id. As discussed within this Brief, under New Jersey law, people who are not either married or joined in a civil union have no legally cognizable claim for loss of consortium. Florida law likewise does not permit unmarried people to assert loss of consortium claims, and there is therefore no need to perform an extensive choice of law analysis. See, e.g., Tremblay v. Carter, 390 So. 2d 816, 817-18 (Fl. Ct. App. 1980). Because no conflict exists between the laws of the two potentially interested states, there is no need for further choice of law analysis. DreamPak, 303 F. Supp. 2d at 521.

flight attendant, claimed injury resulting from alleged defects in a Boeing aircraft. At the time of plaintiff's injury, she was engaged to co-plaintiff, Warren Schroeder. See id. In holding that Mr. Schroeder could not recover for loss of consortium, this Court conducted a detailed analysis of New Jersey precedent . Id.

As noted by this Court in Schroeder, only one New Jersey state case, Stahl v. Nugent, 212 N.J. Super. 340 (Law Div. 1986), has allowed recovery to a spouse where a known, discovered injury occurred before the actual marriage. See Schroeder, 712 F. Supp. at 40. However, as Schroeder noted, Stahl has since been repudiated and it is a "basic principle" of New Jersey law that a spouse cannot recover for loss of consortium damages as a result of injuries to his or her spouse when there was no legal marital relationship at the time of injury. Id. at 42.

Shortly after Ms. Brigando's injury, the DPA went into effect. The DPA extends "certain rights and benefits" "accorded to married couples" to registered domestic partners. N.J.S.A. § 26:8A-2(d). Specifically, the DPA provides domestic partners with the statutory protection of New Jersey's Law Against Discrimination, visitation and medical decision rights for one domestic partner where the other becomes incapacitated, and certain tax benefits. See id. The DPA does not afford Ms. Binder a basis for recovery in this case, however. The DPA did not expressly enable domestic partners to recover for loss of consortium and it did not grant domestic partners the entire quantum of benefits traditionally afforded married spouses. Under New Jersey law, where a statute is silent, it is well settled that the "Court must interpret the statute in light of the Legislature's intent." Burns v. Belafsky, 166 N.J. 466, 473 (2001). The legislative history of the DPA strongly suggests that it should be interpreted to provide the limited benefits enumerated within the DPA itself, rather than a general extension of all marital

benefits; in fact, the Assembly Appropriation Committee expressly stated that "domestic partnership is a status distinct from marriage." State of New Jersey, Assembly Appropriations Committee Statement to Assembly on No. 3743, L. 2003 c. 246 (Dec. 11, 2003) *reprinted in* N.J.S.A. § 26:8A-1, annotations.

While there are no New Jersey cases which discuss the DPA in this context, New York has held that registered domestic partners cannot bring a loss of consortium claim. In Lennon v. Charney, unmarried cohabitants who were registered as domestic partners under New York City's Domestic Partnership Law attempted to bring a loss of consortium claim. See Lennon v. Charney, 797 N.Y.S.2d 891, 892 (N.Y. Sup. Ct. 2005). Much like the DPA, the New York City Domestic Partnership Law "established a registry for domestic partners and extended certain rights and benefits to domestic partners of New York City employees and to New York City residents who become domestic partners." Id. (internal citations omitted). Holding that the New York City law did not allow the maintenance of a loss of consortium claim, the Court noted that New York State "has always held that a lawful marriage is a prerequisite to a claim for loss of services and consortium. New York City's determination to expand certain benefits and rights to those outside a marital relationship does not compel or warrant a different result." Id. Likewise, New Jersey requires that a couple be legally married before a spouse may recover for loss of consortium, and the DPA's grant of certain unrelated benefits to domestic partners did not alter this longstanding precedent.

This conclusion is buttressed by subsequent developments in New Jersey law. In 2006, the New Jersey Supreme Court held that "[t]o comply with the equal protection guarantee of Article I, Paragraph I of the New Jersey Constitution, the State must provide to committed same-sex couples, on equal terms, the full rights and benefits enjoyed by heterosexual married

couples." Lewis v. Harris, 188 N.J. 415, 463 (2006). In so holding, the New Jersey Supreme Court recognized that, although the DPA provided same-sex couples with several rights and protections previously afforded only to married couples, it did not completely "bridge the inequality gap between committed same-sex couples and married opposite-sex couples." Id. at 448.

In response to the Lewis decision, the Legislature enacted a statutory scheme which permits same-sex couples to enter into civil unions. N.J.S.A. § 37:1-28 *et seq.* The statute provides a non-exclusive list of the legal protections, benefits and responsibilities of spouses that now apply to civil union couples, including "causes of action related to or dependent upon spousal status, including an action for . . . loss of consortium . . ." N.J.S.A. § 37:1-32 (b). In other words, the Legislature explicitly recognized that under New Jersey law, prior to enactment of the civil union statute, only spouses had a cause of action for loss of consortium. The DPA contained no such similar language, and therefore did not provide same-sex couples with the right to assert a loss of consortium claim.

Even if the DPA had provided same-sex couples with the right to assert a loss of consortium claim, however, Ms. Binder's claim is still barred. Although it does appear that Ms. Brigando and Ms. Binder registered as domestic partners under the DPA at some point, they could not have been so registered at the time of Ms. Brigando's injury. The DPA was approved on January 12, 2004 and became effective on July 10, 2004 (180 days following enactment). See Hennefeld v. Township of Montclair, 22 N.J. Tax. 166, 173 (N.J. Tax. Ct. 2005). As recognized in Hennefeld, the DPA provides protection only to those who register as domestic partners under its terms. Id. In Hennefeld, a same-sex couple had owned their home for nearly twenty years, but did not register as domestic partners until July 12, 2004, two days after the DPA took effect.

See id. Recognizing the "general rule prohibiting retroactive application of statutes" which was intended to give the public "fair notice of the law it is expected to follow," the court held that there should be no retroactive benefit under the DPA. Id. at 203. The court explained that "(1) the public was given fair notice that the DPA would be enacted on July 10, 2004, and (2) the Plaintiffs were not eligible for a 100% exemption prior to July 12, 2004 (the date they registered under the DPA)." Id. at 204. This is in accord with New Jersey policy, which "favors prospective application of statutes." See Savarese v. New Jersey Automobile Full Insurance Underwriting Assoc., 235 N.J. Super. 298, 307 (App. Div. 1989).

Likewise, it appears that the civil union statute cannot be applied retroactively. The civil union statute went into effect on February 19, 2007, more than two and a half years after the incident. See N.J.S.A. 37:1-28. Although no court has explicitly decided whether the civil union statute can have retroactive application, a recent decision of the Appellate Division makes any retroactive application unlikely. See Quarto v. Adams, ___ A.2d ___, 2007 WL 2262736 (N.J. Super. App. Div. Aug. 9, 2007). In Quarto, a same-sex couple who had been married in Canada in 2003 and registered under the DPA in 2004 sought to file a joint state tax return for the 2006 tax year – a right permitted under the civil union statute, but not the DPA. See id. Under New Jersey law, a couple must be married by the end of the tax year to file a joint return. See id. The couple argued that New Jersey was required to recognize their marriage as of the date of the Lewis decision, October 25, 2006, and the couple was therefore entitled to file a joint return for the 2006 tax year. See id. The court disagreed. In explaining the decision, the court reasoned that allowing the couple to file a joint tax return for the 2006 tax year could lead to an argument that same-sex couples who had married or entered into a civil union in another state prior to the Lewis decision should be allowed to amend tax returns from years prior to 2006. See id. The

court then explained that "[w]e do not read Lewis v. Harris to require such potential retroactive disruption." Id. Although the statement regarding retroactive application of the Lewis decision was largely dicta, the Quarto decision suggests that the civil union statute does not apply retroactively.

Additionally, if the civil union statute were allowed to apply retroactively, the purpose of the general rule that statutes apply prospectively would be completely subverted, because the public would have had no fair notice as to what law it was expected to follow. Indeed, the civil union statute was passed only after the court in Lewis recognized that certain benefits of marriage were denied to same-sex partners under New Jersey law as it existed at the time Lewis was decided. Permitting retroactive application of the civil union statute would lead to an untenable result, permitting couples to argue that they should receive certain benefits prior to the effective date of the civil union statute or even the effective date of the DPA, even when those benefits were not contemplated as part of the DPA. For the same reasons as stated in Hennefeld, and in light of the Quarto decision, a New Jersey court will likely find that the civil union statute applies prospectively only.

Even if the civil union statute could arguably be applied retroactively, there is no evidence that Ms. Brigando and Ms. Binder have entered into a civil union in New Jersey. By its terms, the enactment of the civil union statute did not terminate existing domestic partnerships or convert those existing domestic partnerships into civil unions. See N.J.S.A. 26:8A-4.1. The civil union statute provides "This act shall not alter the rights and responsibilities of domestic partnerships existing before the effective date of this act, except that eligible domestic partners shall be given notice and opportunity to enter into a civil union pursuant to the provisions of this

act." Id. In other words, the enactment of the civil union statute gave no greater rights to couples registered as domestic partners under the DPA than they had prior to February 19, 2007.

In this case, Ms. Brigando was allegedly injured on June 17, 2004, nearly one month before the DPA became effective and more then two and a half years before the civil union statute became effective. Even if Ms. Brigando and Ms. Binder had registered as domestic partners on July 10, 2004, and even if the DPA afforded same-sex partners the right to recover for loss of consortium, Ms. Binder cannot prevail on her claim because the DPA does not apply retroactively. Ms. Binder therefore cannot be deemed Ms. Brigando's domestic partner under the DPA at the time of the alleged incident. Furthermore, there is no evidence that Ms. Brigando and Ms. Binder entered into a civil union after that option became available; even if they had, the enactment of the civil union statute did not give them greater rights as domestic partners than they had prior to enactment, and they cannot be deemed to have entered into a civil union prior to February 19, 2007. As the above-cited cases illustrate, New Jersey law is absolutely clear that the injury underlying a loss of consortium claim must have occurred during the marriage or civil union. Ms. Binder cannot base a viable loss of consortium claim on any theory, nor can she amend her complaint to cure the defect. Count three should therefore be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, HRC respectfully requests that its motion to dismiss plaintiff Pamela Joy Binder's loss of consortium claim, with prejudice, be granted.

DRINKER BIDDLE & REATH LLP
Attorneys for Defendant,
Walt Disney World Hospitality & Recreation
Corporation

Dated: September 5, 2007

By: /s/ Stacey P. Rappaport
Stacey P. Rappaport (SR 4359)
Stacey.Rappaport@dbr.com
DRINKER BIDDLE & REATH LLP
A Delaware Limited Liability Partnership
500 Campus Drive
Florham Park, NJ 07960
(973) 360-1100