UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK, NEW JERSEY

---

MARIANNE BRIGANDO and PAMELA JOY BINDER,

    Plaintiffs,

vs.

WALT DISNEY WORLD CO., AND/OR WDW HOSPITALITY & RECREATION CORP. AND/OR ABC CORPORATION #1-10 AND/OR THEIR AGENTS, REPRESENTATIVES AND/OR EMPLOYEES, JOHN DOES #1-10,

    Defendant(s).

:  Civil No. 06-1191 (SRC-CCC)

---

**BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR DISMISSAL OF PLAINTIFFS' THIRD COUNT**

---

                                              **LEVINSON AXELROD, P.A.**
                                              Adam Rothenberg, Esq.
                                              Levinson Plaza
                                              2 Lincoln Highway
                                              P.O. Box 2905
                                              Edison, New Jersey 08818
                                              (732) 494-2727
                                              Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………………...ii

PRELIMINARY STATEMENT……………………………………………………………………….……1

STATEMENT OF FACTS………………………………………………………………………….....……..2

LEGAL ARGUMENT

    A.  Standard for Dismissal under Fed. R. Civ. P. 12(c). …………………………………3

    B.  Plaintiff has stated a claim upon which relief may be granted ………………………4

CONCLUSION…………………………………………………………………………………..12

# **TABLE OF AUTHORITIES**

Statutes

*N.J.S.A.* § 26:8A-2……………...…………………………………….....................…..4, 5, 6

*N.J.S.A.* § 37:1-28 …………………………………………………………….………..…11

Rules

Fed. R. Civ. P. 12(c)………………………………………………………………………3

Cases

Allah v. Brown, 351 F.Supp.2d 278 (D.N.J. 2004)…………………………………….……3

Buell and Moffett v. Clara Maass, L-5144-03
(May 11, 2005)...……………………………………………………………….………...6, 9, 10

Dunphy v Gregor, 136 N.J. 99 (1994)………………………………………..………7, 8, 9, 10

Hennefeld v. Township of Montclair,
22 N.J. Tax 166 (N.J. Tax Ct. 2005)…………….....................................................5, 6

Jablonski v. Pan American World Airways, Inc.,
863 F.2d 289 (3d Cir. 1988)……………………………………………………………….3

Ketron v. Chattanooga-Hamilton County Hosp. Auth.,
919 F. Supp. 280 (E.D. Tenn. 1996)………………………………………………………3

Lewis v. Harris, 188 N.J. 415 (2006)……………………………………......………………11

Lozoya v. Sanchez, 133 N.M. 579 (N.M. 2003)……………………………………..................9

Oshiver v. Levin Fieshbein, Sedran & Berman,
38 F.3d 1380 (3d Cir. 1994)……………………………………………………………....3

Rothman v. Rothman, 65 N.J. 219 (1974)………………………………………....…..10

Schroeder v. Boeing Commercial Airplane Co.,
712 F.Supp. 39 (D.N.J. 1989)…………….....……………………………………………….9

Soc'y Hill Civic Ass'n. v. Harris, 632 F.2d 1045 (3d Cir.1980)…………………………….3

Southern Ohio Bank v. Merrill Lynch, Pierce, Flenner & Smith,
479 F.2d 478 (6th Cir. 1973)……………………………………………………………..3

Stahl v. Nugent, 212 N.J. Super. 340 (Law Div. 1986)………………………………………..9

Thomason v. Nachtrieb, 888 F.2d 1202 (7th Cir. 1989)………………………………………….3

United States v. O'Neil11 F.3d 292 (1st Cir. 1993)…………………………………………6

**PRELIMINARY STATEMENT**

Plaintiffs, Marianne Brigando and Pamela Binder, submit this brief in opposition to defendant's motion to dismiss count three of the plaintiffs' complaint for a failure to state a claim pursuant to Fed. R. Civ. P. 12(c).  Ms. Brigando and Ms. Binder are life partners in a serious and long term relationship. Ms. Brigando and Ms. Binder have been domestic partners since shortly after the Act was made effective.   Ms. Binder is currently seeking loss of consortium damages resulting from an accident that occurred when Ms. Brigando sustained a head injury, while riding the Splash Mountain attraction at World Disney World, Florida.

The Domestic Partnership Act ("DPA") of New Jersey was passed on January 1, 2004 and implemented on July 10, 2004.  The DPA guaranteed certain rights to domestic partners that are available to married couples.  Specifically, it granted several fundamental rights to domestic partners in an attempt to correct an oversight. These rights included; freedom from discrimination, the right to make life and death decisions, and tax benefits.  While the DPA does not specifically list the right to pursue loss of consortium claims, the courts of New Jersey have determined that the list of rights and benefits in the statute is not exclusive.  Accordingly, when the legislative intent of the DPA is examined it is clear that a same sex domestic partner is given the ability to pursue a loss of consortium claim.  Furthermore, the enactment of the DPA should not act as a bar to the ability of a same-sex couple to bring a suit.

Even if the court were to deny the plaintiff's relief under the DPA, the plaintiff would still be entitled to pursue a loss of consortium claim via the constitutional guarantees outlined by the Supreme Court.  Thus, Ms. Binder has both a statutory and constitutional right to pursue a loss of consortium claim.

## **STATEMENT OF FACTS**

Plaintiffs instituted this action in New Jersey state court in April 2005 against HRC and Walt Disney World Co.  Case has subsequently been moved to New Jersey District court. Claim arises from injuries sustained by plaintiff, Ms. Brigando, while riding the Splash Mountain theme park ride as a patron of Walt Disney World on June 17, 2004.  (See Copy of Plaintiff's Complaint, attached as Exhibit "A").  Ms. Binder, Ms. Briganado's life partner, has asserted her right to a loss of consortium claim.  Defendant has brought this suit alleging that plaintiff does not have a right to pursue a loss of consortium claim.

In March of 2005, Ms. Binder and Ms. Brigando registered as Domestic partners in the State of New Jersey pursuant to the DPA.  They have not proceeded with a "domestic union" because they want to marry and have a conscientious objection to the limitation and fact that the act does not recognize the right of same sex couples to marry.

## LEGAL ARGUMENT

**A.  Standard for Dismissal under Fed. R. Civ. P. 12(c).**

The standard for dismissal pursuant to Rule 12(c) motion for judgment on the pleadings is the same as for a Rule 12(b)(6) motion to dismissal for failure to state a claim. Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir. 1989); Ketron v. Chattanooga-Hamilton County Hosp. Auth., 919 F. Supp. 280 (E.D. Tenn. 1996). A motion for judgment on the pleadings is not granted "unless the movant clearly establishes that no material issue of fact remains to be resolved." Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988) (citing Soc'y Hill Civic Ass'n. v. Harris, 632 F.2d 1045, 1054 (3d Cir.1980)). Thus, the Court must construe the pleadings in the light most favorable to the plaintiffs, taking as true all well-pleaded facts and allegations present within the complaint. Southern Ohio Bank v. Merrill Lynch, Pierce, Flenner & Smith, 479 F.2d 478, 480 (6th Cir. 1973). In the course of rendering its verdict, the court may consider the Complaint and any exhibits attached, matters of public record, orders and other items in the record.  See Oshiver v. Levin Fieshbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  Finally, the Court must accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the non-moving party, but will not accept unsupported conclusory statements. Allah v. Brown, 351 F.Supp.2d 278, 280 (D.N.J. 2004).

B. **<u>Plaintiff Has Stated a Claim upon Which Relief May be Granted.</u>**

Plaintiff has clearly presented a claim upon which relief may be granted. Although the Domestic partnership Act ("DPA") does not explicitly recognize loss of consortium claims, the legislative intent is to provide this benefit to same sex domestic partners. Under the current reading of the DPA, even though the right to bring a loss of consortium claim is not explicitly listed, the legislative intent has been interpreted as to provide this benefit to same-sex domestic partners. Furthermore, even if the plaintiff is not entitled to loss of consortium claims under the DPA, the plaintiff has a constitutional right to the same benefits and status as a married couple.

I. The Domestic Partnership Act Permits a Same-Sex Domestic Partner to Bring a Loss of Consortium Claim.

The DPA enables the plaintiff to pursue a loss of consortium claim against the defendant, even though this right was not specifically listed in *N.J.S.A*. 26:8A-2. The DPA was approved on January 12, 2004 and placed into affect 180 days later on July 10, 2004. The DPA provides that, "All persons in domestic partnerships should be entitled to certain rights and benefits that are accorded to married couples under the laws of New Jersey" *N.J.S.A*. 26:8A-2(d). In addition to securing certain rights and benefits for all domestic partnerships, the Legislature gave special consideration to the unique position of same-sex domestic partnerships. In *N.J.S.A*. 26:8A-2(d) of the DPA the Legislature acknowledged the problematic place that same-sex couples existed in under the then current laws of New Jersey;

> "The Legislature discerns clear and rational basis for making certain health and pension benefits available to dependent domestic partners only in the case of domestic partnerships in which both persons are of the same sex and are therefore unable to enter into a marriage with each other that is recognized by New Jersey law, unlike persons of the opposite sex who are in a domestic partnership but have the right to

4

>enter into a marriage that is recognized by State law and thereby have access to these health and pension benefits…"

In addition to *N.J.S.A.* 26:8A-2(e), the Committee Statement provided further insight into the legislative concern for the issues facing same-sex domestic partnerships. "Currently a significant number of New Jersey residents live in families in which the heads of house are unmarried. Despite their interdependence and mutual commitment, these families do not have access to the protections and benefits offered by the law to married couples." (Assemb. Appropriations Comm., Assemb. No. 3743- L. 2003, c. 246, following *N.J.S.A.* 26:8A-1). It is clear from this language that the Legislature recognized that the law had placed same-sex domestic partnerships in a unique position and were attempting to rectify this previous oversight.

The defendant's brief surmises that the DPA does not permit a domestic partner to pursue a loss of consortium claim because this right is not specifically mentioned within the text of the statute. However, the court in Hennefeld v. Township of Montclair, determined that the, "list of certain rights and benefits contained in *N.J.S.A.* 26:8A-2(c) and -2(d) are not exclusive." 22 N.J. Tax 166, 198 (N.J. Tax Ct. 2005). In Hennefeld, the court determined that a tax exemption given to married couples where one of the partners is a veteran should be available to same-sex couples who had registered under the DPA even though this tax exemption was not specifically mentioned in *N.J.S.A.* 26:8A-2(c) or (d). Id. In reaching this conclusion, the court found it persuasive that the legislature had placed the word "*including*" directly before listing the rights available to domestic partners, clearly indicating that the list was not meant to be exclusive. Id. at 198.

After concluding that the statute should be read broadly, the court then considered whether this would be the type of benefit that the legislature had intended that the DPA provide. In attempting to discern the legislative intent the court found significant the legislature's

5

recognition of the inability of same-sex domestic partners to enter into a marriage and obtain the legal rights available to a married couple in *N.J.S.A.* 26:8A-2(e). Id. at 199.  The court also examined legislative findings and concluded that the legislature was concerned that same-sex couples were being deprived of many legal protections, "because they …are… unable to enter into a marriage with each other that is recognized by New Jersey Law, unlike persons of the opposite sex..," *N.J.S.A.* 26:8A-2(e), and therefore "do not have access to the protections and benefits offered by law to married couples." Id. at 199 (quoting Assemb. Appropriations Comm., Assemb. No. 3743, L. 2003, c. 246.)  The court concluded that the legislative intent of the DPA was to provide same-sex domestic partnerships with the legal rights that are available to married couples, and therefore the tax exemption was clearly a benefit envisioned under the DPA.

While Hennefeld is the only appellate level decision interpreting the DPA, plaintiff's discovery has yielded an un-reported trial level case that is analogous to the facts of the case at hand.  While not binding, this case is an example of how a court of New Jersey may interpret a same-sex domestic partners ability to pursue a loss of consortium claim.  In Buell and Moffett v. Clara Maass, L-5144-03 (May 11, 2005), the plaintiff pursued a loss of consortium claim under the DPA.  (Attached as Exhibit "B").  Like the case at bar, the injury from which the claim had arisen occurred before the implementation of the DPA.  The conclusion rendered by the trial judge was that the same-sex domestic partner should have the ability to pursue a loss of consortium claim starting on the date that the domestic partnership was registered under the DPA.  In reaching this conclusion, the court examined both the current case law as well as the legislative intent of the DPA.  The trial judge relied upon the court's logic in Hennefeld, and adopted a broader reading of the DPA.  The trial court leaned on the reasoning of the court in United States v. O'Neil, where the court determined that a when a fundamental right is granted,

6

it is common sense that lesser rights are inherently included. 11 F.3d 292, 296 (1st Cir. 1993). The court concluded that because the DPA grants several very fundamental rights such as freedom from discrimination, the right to make life and death decisions, and tax benefits, a lesser right such as the ability to pursue a loss of consortium should obviously be included.

When the decisions of the appellate and trial court are considered together, it becomes apparent that a same-sex domestic partner has the ability to pursue a loss of consortium claim under the DPA. This reading is clearly in accordance with the desires of the legislature in the passage of the DPA.

II.  The Domestic Partnership Act Should Permit the Plaintiff to Bring a Loss of Consortium Claim Even Though the Accident Occurred Before July 10, 2004.

Since the right to pursue a loss of consortium claim is given by the DPA, the inquiry becomes whether the DPA is applicable in the present case. Plaintiff argues that both the legislative intent, as well as the evolution of the case law of New Jersey, dictate that the plaintiff should be able to recover from the date that the domestic partnership was registered under the DPA even though the accident occurred before they were legally permitted to register.

In their brief, the defendant has correctly stated the dates of the accident. The accident occurred in June 17, 2004 and the DPA was not implemented until approximately three weeks later, on July 10, 2004. However, the defendant's claim that this should act as a bar to the plaintiff's ability to recover under a loss of consortium claim ignores the implications of our Supreme Court's ruling in <u>Dunphy v Gregor</u>, 136 N.J. 99 (1994), the legislative intent behind the DPA, the contradicting law addressing loss of consortium claims for unmarried couples, and the interpretation of the DPA by several lower courts.

7

In <u>Dunphy</u>, the New Jersey Supreme Court determined that the ability to recover for emotional distress should not be limited to relationships of marriage or blood, "but may, in appropriate circumstances, include intimate familiar relationships between unmarried cohabitants, if these relationships are also substantial, stable and enduring." 136 N.J. 99 (1994). The court further concluded that a couple who is in a "intimate familiar relationship that is stable, enduring, substantial, and mutually supportive" should be able to recover if that emotional security is devastated by the tortuous acts of another party. <u>Id.</u> at 115. The standard used to determine whether an individual has the ability to bring an emotional distress suit should be to examine the;

> "duration of the relationship, the degree of mutual dependence, the extent of common contributions to a life together, the extent and quality of shared experience, and …. Whether the plaintiff and the injured person were members of the same household, their emotional reliance on each other, the particulars of their day to day relationship, and the manner in which they related to each other in attended to life's mundane requirements. <u>Id.</u> at 123.

This decision was a stark deviation from the previous bright line test of marriage that had been present in emotional distress tort cases. Dunphy is particularly relevant in the present situation because of the similarity between a claim of emotional distress and a loss of consortium claim. It would reason, that at the present time, the Supreme Court would apply the Dunphy test to the case at bar rather than the bright line marriage test suggested by the defendant.

The Supreme Court ruling in <u>Dunphy</u> parallels the evolving perspective that society has towards same-sex rights. While not binding upon this court, an example of these changing viewpoints is a recent decision by the New Mexico Supreme Court. In <u>Lozoya v. Sanchez</u>, the

Supreme Court of New Mexico determined that a couple who was living in a domestic partnership at the time of the accident and had subsequently gotten married should be able to bring a claim of loss of consortium. 133 N.M. 579 (N.M. 2003). The reasoning that the Supreme Court of New Mexico employed in reaching this conclusion is very similar to the test put forth by the court in Dunphy.

Taking further credibility from the defendant's position is the contradicting law addressing an unmarried couple's ability to pursue a loss of consortium claim. For example, a law division court held in Stahl v. Nugent that a married couple, who had only been engaged at the time of the accident, should not be barred from bringing a loss of consortium claim. 212 N.J. Super. 340 (Law Div. 1986). While the result of Stahl was criticized in Schroeder v. Boeing Commercial Airplane Co., 712 F.Supp. 39 (D.N.J. 1989), Stahl has never been specifically overruled. However, as the trial level judge in Buell acknowledged, both Stahl and Schroeder probably do not adequately reflect the current opinion of the New Jersey Supreme Court. Buell at 5. These cases were both decided in the eighties, before the ruling in Dunphy, and at a time when the legal position of same-sex couples was an afterthought.

As mentioned *supra*, the only case directly on point discovered during the plaintiff's discovery, was a trial level case from the Civil Law division of Essex County. The trial court in Buell believed that a middle interpretation of the legislative intent of both the case law as well as the DPA persuasive. The court concluded that domestic partners should be permitted to pursue a loss of consortium claim for an accident that occurred before the passage of the DPA from the date that they were registered under the DPA. The trial court relied on several factors in reaching this conclusion. First, the court believed that this ruling was in concurrence with the new standards set forth in Dunphy by the Supreme Court. Id. at 5. Second, the court deduced

9

that it was not the intention of the Legislature to give immunity to a tort defendant for an action that was wrongful whether committed before the DPA or after the DPA. Id. at 14. Lastly, the trial court did not believe that the intention of the legislature was to bar the ability to recover for damages that occurred before the passage for the Act for couples who were emotionally committed to each other yet unable to become legally committed until June 10, 2004. Judge Rothschild believed, "a legislature so clearly committed to expanding the rights of domestic partners would have wished to allow recovery." Id. at 15.

Furthermore, the opinion in Buell addressed the defendant's argument that the court would be giving partial retroactive effect to the DPA. In Rothman v. Rothman, 65 N.J. 219 (1974), the Supreme Court determined that a statute may be given retroactive effect if no other meaning can be giving to the statute, or the intent of the Legislature could not be satisfied by any other means. Id. at 219. The trial court reasoned that the purpose of the legislature in securing rights for same-sex domestic couples was explicitly clear, and that there were no other reasonable means to accomplish the intent of the legislature without giving partial retroactive effect to the DPA. Buell, at 15.

The plaintiff urges that the court find the logic of the trial court persuasive. It seems apparent that the plaintiff should have the right to a loss of consortium claim when the intent of the Legislature behind the passage of the DPA is examined with the evolving standards that our Supreme Court developed in Dunphy.

10

III. Even if the Court Were to determine that the Plaintiff May Not Bring a Loss of Consortium Claim under the Domestic Partnership Act, the Plaintiff has a Constitutional Right to the Same Rights granted to a Married Couple.

Even if the court were to determine that same-sex partnerships do not have the ability pursue a loss of consortium claim under the DPA, recovery should still be available under the ruling by Supreme Court decision in Lewis v. Harris, which held that same-sex couples are entitled to the full rights and benefits enjoyed by heterosexual married couples under the Article I, Paragraph I of the New Jersey Constitution.  188 N.J. 415, 463 (2006).

The defendant has argued in their brief that permitting the plaintiff to recover under *N.J.S.A.* 37:1-28 would be the same as giving a retroactive application of the statute.  However, the right to have access to the same privileges and rights as married couples is based on the equal protection clause of our state's constitution not a legislative statute. Lewis, 188 N.J. at 463.  The Civil Union Act merely recognizes the right of sex couples to have access to the same legal protections as heterosexual married couples.  These rights predated *N.J.S.A.* 37:1-28, when the legislature had previously been illegally infringing upon them.

In accordance with *N.J.S.A.* 37:1-28, if an accident were to happen tomorrow they would have the ability to bring a loss of consortium claim.  However, this right does not stem from *N.J.S.A.* 37:1-28, but rather from Article I, Paragraph I of the New Jersey Constitution. Accordingly, since the plaintiff's right to bring a loss of consortium claim emerges from their constitutional guarantees under the New Jersey Constitution rather than *N.J.S.A.* 37:1-28, the plaintiffs are not seeking a retroactive result; rather they are seeking recognition of their constitutional right to the same rights as a married couple.

## **CONCLUSION**

Accordingly, the plaintiffs respectfully request that the court deny the defendant's motion to dismiss for failure to state a claim.

                      LEVINSON AXELROD, P.A.

                      Attorneys for Plaintiffs

                      By:_____

                      Adam L. Rothenberg

September 24, 2007